# United States Court of Appeals

## For the First Circuit

No. 05-2453

IN RE CARLTON DANA PRATT AND CHRISTINE ANN PRATT,

Debtors

CARLTON DANA PRATT,

Appellant,

v.

GENERAL MOTORS ACCEPTANCE CORPORATION,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, Senior U.S. District Judge]

Before

Lipez, Circuit Judge,

Cyr, Senior Circuit Judge,

and Howard, Circuit Judge.

James F. Molleur, for appellant.
F. Bruce Sleeper, with whom Jensen, Baird, Gardner & Henry,
was on brief for appellee.

September 1, 2006

**CYR, <u>Senior Circuit Judge</u>**.  Carlton and Christine Pratt, chapter 7 debtors, appeal the district court judgment which affirmed a bankruptcy court ruling that General Motors Acceptance Corporation (GMAC) did not violate the chapter 7 discharge injunction by declining to discharge its lien on the debtors' automobile until they paid the remaining balance due on their prepetition car loan.  We now reverse and remand for further proceedings.

**I**

**<u>BACKGROUND</u>**

In 1994, Carlton Pratt bought a new Chevrolet Cavalier and financed the purchase through GMAC, which acquired a lien on the vehicle.  Four years later, the Pratts filed a chapter 13 petition, and estimated the current value of the vehicle at $4900. The bankruptcy court allowed the GMAC proof of secured claim for the outstanding loan balance (including interest) at $3,291.35, and GMAC subsequently received $1,083.62 in distributions during the course of the chapter 13 proceeding.

In 1999, the Pratts converted their chapter 13 case to chapter 7, by which time the balance due on the GMAC secured claim approximated $2620.  Pursuant to Bankruptcy Code § 521(a)(2)(A), the Pratts gave notice that they intended to "surrender" the vehicle, <u>viz.</u>, by ceding possession in lieu of reaffirming their prepetition loan obligation to GMAC.  The bankruptcy court granted

-2-

the GMAC motion for relief from the automatic stay in order to allow GMAC to realize on its lien. GMAC notified the Pratts in writing of their right to cure the default. After concluding that the expense of repossession would outstrip the value of its secured claim, GMAC followed its customary practice of writing off the remaining loan balance. The Pratts retained possession of the vehicle. The bankruptcy court granted the Pratts a chapter 7 discharge, which released them from their outstanding personal indebtedness for the balance due on the GMAC car loan.

By September 1999, the Pratts realized that the Cavalier was inoperable, hence essentially worthless, and that they would have to dispose of it. Before they could "junk" the car, however, salvage dealers were required by Maine law to obtain a release of the GMAC lien. During the next few months, the Pratts repeatedly contacted GMAC and requested that it either repossess the car or release the lien. GMAC refused to release its lien unless and until the outstanding loan balance was paid in full.

The bankruptcy court allowed the Pratts' motion to reopen their chapter 7 case to permit them to file the instant adversary proceeding against GMAC, which alleges that GMAC's refusal either to repossess the vehicle or to release the lien, absent full payment of the discharged loan balance, violated the chapter 7 discharge injunction prescribed by Bankruptcy Code § 524(a)(2). Cf., e.g., Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 21 (1st

Cir. 2002) ("Even after the termination of a bankruptcy case, a discharged debtor who wishes to redeem property pursuant to section 722, but who believes that the terms proposed by the lienholder are unfair, can ask the bankruptcy court to reopen the bankruptcy case and adjudicate the matter.").

In due course, the court entered judgment for GMAC. In re Pratt, 324 B.R. 1 (Bankr. D. Me. 2005). The court held that (i) GMAC's in rem right under Maine law to enforce its lien against the vehicle survived intact the chapter 7 discharge of the Pratts' unsecured personal liability on the loan; (ii) by Maine statute, a secured creditor has an unqualified right to refuse to release its lien until the loan balance is paid in full; (iii) the GMAC refusal to release its lien did not coerce the Pratts to repay their discharged personal liability on the car loan, but simply invoked its legitimate in rem remedies as accorded under Maine law; and (iv) the situation was no more coercive than had GMAC offered the Pratts a reaffirmation agreement whereby they could consent to repay both the secured and unsecured portions of the loan indebtedness. See id. at 8-9. Following an unsuccessful intermediate appeal to the district court, the Pratts initiated the instant appeal.

## DISCUSSION

### A.   The Putative Violation of the Chapter 7 Discharge Injunction

The Pratts reiterate on appeal that GMAC violated the chapter 7 discharge injunction because its refusal either to repossess the vehicle or to release its lien effectively coerced them to repay the discharged personal liability on their car loan. They insist that the GMAC decision effectively negated their right to "surrender" the vehicle pursuant to Bankruptcy Code § 524(a)(2).

Following an intermediate appeal to the district court, we directly review the bankruptcy court decision, conducting de novo review of its legal conclusions, and clear error review of its findings of fact.  See In re New Seabury Co. Ltd. P'ship, 450 F.3d 24, 33 (1st Cir. 2006).

"A [bankruptcy] discharge . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524(a)(2); Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265, 267 n.4 (1st Cir. 1999).  "[A] bankruptcy court is authorized to invoke § 105 to enforce the discharge injunction imposed by § 524 and order damages for the appellant in this case if the merits so require."  Bessette

v. <u>Avco Fin. Servs., Inc.</u>, 230 F.3d 439, 445 (1st Cir. 2000).[1]

       Although the unsecured portion of a secured creditor's claim may be discharged in a chapter 7 or 13 case, its lien in the collateral normally survives the bankruptcy proceeding and the discharge, and is enforceable in accordance with state law. <u>See</u> <u>In re Valente</u>, 360 F.3d 256, 259 n.1 (1st Cir. 2004); <u>Arruda</u>, 310 F.3d at 21. The Bankruptcy Code nonetheless contains several provisions which contemplate lien avoidance and/or modification. For example, Bankruptcy Code § 521(a)(2) prescribes several remedies for the debtor who desires to be freed from a prepetition lien:

> [I]f an individual debtor's schedule of assets and liabilities includes debts which are secured by property of the estate –
>
> (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as

---

[1]Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B) within 30 days after the first date set for the meeting of creditors under section 341(a), or within such additional time as the court, for cause, within such 30-day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and

(C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title, except as provided in section 362(h).

11 U.S.C. § 521(a)(2).

Subsection 521(a)(2) thus contemplates three distinct debtor prerogatives: reaffirmation, redemption, or surrender. See Bank of Boston v. Burr (In re Burr), 160 F.3d 843, 847-48 (1st Cir. 1998) (holding that reaffirmation, redemption, or surrender are the exclusive debtor remedies contemplated by § 521(a)(2)). Where the debtor wishes to retain the collateral, he may either "reaffirm" his agreement to repay the prepetition debt under renegotiated terms acceptable to the secured creditor, or "redeem" the collateral by paying its current fair market value to the secured creditor. Due to the importance of the Code's "fresh start" policy, however, reaffirmation agreements are subjected to very stringent controls to ensure that debtors are neither coerced nor harassed by secured creditors into reassuming debts which would otherwise be entitled to discharge. See In re Jamo, 283 F.3d 392,

398 (1st Cir. 2002); <u>Whitehouse</u> v. <u>LaRoche</u>, 277 F.3d 568, 574 (1st Cir. 2002).[2]  Likewise, the Code contains provisions which fix the amount at which the debtor will be entitled to redeem the collateral unilaterally, which in some circumstances may not reflect its current fair market value at redemption.  <u>See</u>, <u>e.g.</u>, 11 U.S.C. § 348(f)(1) (requiring that, when a case is converted to chapter 7 from chapter 13, property be valued at the same amount as its determined value during the chapter 13 case).[3]  Where the

---

[2]Subsection 524(c) requires that reaffirmation agreements

(i)  be executed before the [general] discharge has been granted;

(ii)  be in consideration for a dischargeable debt, whether or not the debtor waived discharge of the debt;

(iii)  include clear and conspicuous statements that the debtor may rescind the reaffirmation agreement at any time prior to the granting of the general discharge, or within sixty days after the execution of the reaffirmation agreement, whichever occurs later, and that reaffirmation is neither required by the Bankruptcy Code nor by nonbankruptcy law;

(iv)  be filed with the bankruptcy court; and

(v)  be accompanied by an affidavit of the debtor's attorney attesting that the debtor was fully advised of the legal consequences of the reaffirmation agreement, that the debtor executed the reaffirmation agreement knowingly and voluntarily, and that the reaffirmation agreement would not cause the debtor "undue [<u>e.g.</u>, financial] hardship."

11 U.S.C. § 524(c); <u>see</u> <u>Jamo</u>, 283 F.3d at 399.

[3]Although we need not address the issue, the district court noted that, even though the Pratts' vehicle had become essentially inoperable and worthless by 1999, subsection 348(f)(1) permanently fixed its redemption value at $2620.73 – its assessed value during

debtor decides not to reaffirm, or the parties cannot negotiate a reaffirmation, or redemption is not economically feasible, the debtor has but one option: "surrender" the collateral. The Pratts elected the latter option.

Subsection 521(a)(2) does not, however, define the term "surrender." Since Congress did not use the term "deliver," however, one reasonably may assume that "surrender" does not necessarily contemplate that the debtor physically have transferred the collateral to the secured creditor. See, e.g., In re Cornejo, 342 B.R. 834, 836-37 (Bankr. M.D. Fla. 2005).[4] Thus, the most sensible connotation of "surrender" in the present context is that the debtor agreed to make the collateral <u>available</u> to the secured creditor – <u>viz.</u>, to cede his possessory rights in the collateral – within 30 days of the filing of the notice of intention to surrender possession of the collateral. Similarly, nothing in subsection 521(a)(2) remotely suggests that the secured creditor is <u>required</u> to accept possession of the vehicle at the end of the 30-

---

their chapter 13 case – thus making § 521(a)(2) redemption economically infeasible for the Pratts.

[4]Some courts interpret subsection 521(a)(2) to require that the debtor surrender possession of the collateral to the trustee, and not to the secured creditor. See In re Claflin, 249 B.R. 840, 848 n.6 (BAP 1st Cir. 2000). But cf. Jamo, 283 F.3d at 397 ("The debtor may, of course, surrender the collateral to the secured creditor."). In this case, we need not address the issue, as the record contains no evidence that the Pratts concealed the vehicle from estate representatives, nor that the latter had any interest in administering the property. Consequently, we assume, arguendo, that there has been an abandonment.

day period, as such a reading would be at odds with well-established law that a creditor's decision whether to foreclose on and/or repossess collateral is purely voluntary and discretionary. Thus, we agree with the GMAC contention that the Pratts' surrender did not require that it repossess the vehicle if GMAC deemed such repossession cost ineffective.

The more difficult question is whether the "surrender" provision required that GMAC release its lien. In assessing violations of the automatic stay and the discharge injunction, the core issue is whether the creditor acted in such a way as to "coerce" or "harass" the debtor improperly. See In re Diamond, 346 F.3d 224, 227 (1st Cir. 2003); Jamo, 283 F.3d at 399. Although the fact that the Pratts (and not GMAC) initiated all the inquiries about releasing the lien might preclude a finding that GMAC "harassed" the Pratts, that does not foreclose the possibility that GMAC's refusal was objectively and improperly "coercive" in the circumstances. However, the line between forceful negotiation and improper coercion is not always easy to delineate, and each case must therefore be assessed in the context of its particular facts. See id.

The particular record facts material to our assessment of objective coercion are: (i) the Pratts timely filed a § 521(a)(2) notice of their intention to surrender the vehicle; (ii) they did nothing to prevent GMAC from repossessing the vehicle; (iii) the

value of the inoperable vehicle had plummeted to such an extent that it needed to be towed to a junkyard, which declined to accept it absent a valid lien release; (iv) GMAC determined – presumably based upon the precipitous drop in the vehicle's worth – that it was not cost effective to repossess and resell the vehicle; and (v) according to state law, the vehicle could not be junked unless GMAC released its lien.

Although GMAC did not create all these circumstances, and we find no record evidence that it acted in bad faith, in these circumstances its actions were objectively coercive.  Maine law unqualifiedly entitled GMAC to refuse to release its lien unless and until the outstanding loan balance was paid, see 11 Me. Rev. Stat. Ann. tit. 11, §§ 9-1620 to -1624, but state law governs in a bankruptcy proceeding "unless some federal interest requires a different result." Butner v. United States, 440 U.S. 48, 55, (1979); In re LAN Tamers, 329 F.3d 204, 213-14 (1st Cir.), cert. denied, 540 U.S. 1047 (2003).  Thus, even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a "fresh start" and are not unfairly coerced into repaying discharged prepetition debts.

In our view, the particular confluence of the above-mentioned circumstances renders the GMAC refusal to release its lien objectively coercive.  First, GMAC announced that it did not

-11-

intend to repossess the "surrendered" vehicle because it was of insufficient value, then expressly conditioned its release of the lien upon the Pratts' agreement to repay the loan balance in full. Whatever the bona fides of the state-law basis for the GMAC statement, its pronouncement effectively amounted to a demand for a "reaffirmation," which obviously never purported to comply with the stringent "anti-coercion" requirements of Bankruptcy Code § 524(c). See supra note 2. Moreover, as the Pratts could not junk the vehicle without a release of the GMAC lien, see Me. Rev. Stat. Ann. tit. 29-A, § 664-A(4), they were confronted with the grim prospect of retaining indefinite possession of a worthless vehicle unless they paid the GMAC loan balance, together with all the attendant costs of possessing, maintaining, insuring, and/or garaging the vehicle. Therefore, the GMAC refusal had the practical effect of eliminating the Pratts' "surrender" option under § 521(a)(2). This court previously has noted that the "surrender" option is an important safety-valve, inasmuch as a debtor ultimately cannot be coerced into a reaffirmation where he retains the option to surrender the collateral to the secured creditor. See, e.g., In re Burr, 160 F.3d at 848 (noting that debtors cannot be compelled to reaffirm, since "they can always surrender the property and be discharged of the underlying debt"); see also Jamo, 283 F.3d at 400 (same).

We do not suggest that a secured creditor invariably

-12-

would be in violation of the discharge injunction were it to insist upon its <u>in</u> <u>rem</u> rights under state law. However, GMAC identifies no compelling reason for doing so in this instance, relying instead upon its bare right of refusal under state law. Since this motor vehicle was essentially worthless, and vehicles rarely (if ever) appreciate in value over time, there was no reasonable prospect that the automobile would generate future sale proceeds (to which the GMAC lien automatically would have attached, <u>see</u> Me. Rev. Stat. Ann. tit. 11, § 9-1315(1)). GMAC determined that repossession was not feasible. The Pratts maintained, and the bankruptcy court found, that the vehicle had no significant value. Thus, the legitimate <u>raison</u> <u>d'etre</u> for the GMAC lien no longer obtained, and the federal bankruptcy-law interest in according debtors a fresh start, free from objectively coercive reaffirmation demands, must be accorded supremacy. <u>Cf.</u> <u>In re Groth</u>, 269 B.R. 766, 767-68 (Bankr. S.D. Ohio 2001) ("[A] debtor in a chapter 7 case, as part of his fresh economic start, should be permitted to surrender [worthless] collateral he does not intend to keep. If the secured creditor determines that its collateral is worth less than the cost of taking it into its possession, the creditor must waive the effect of its lien so that the debtor is able to dispose of the collateral.").[5]

---

[5]GMAC could have arranged for adequate protection of its interests: for example, by entering into a contractual agreement with the Pratts that it would release the lien in return for their

Although the bankruptcy court aptly noted that this precise situation is likely to arise infrequently (if ever) in future cases, the "coerciveness" involved in each case must be assessed on its particular facts. We can only conclude that the GMAC refusal to release its valueless lien so that the vehicle could be junked – though presumably not made in bad faith – was "coercive" in its effect, and thus willfully violated the discharge injunction. The Pratts are therefore entitled to establish and recover their compensatory damages, together with other appropriate relief under Bankruptcy Code § 105(a).

## B.  **The Burden of Proof**

The bankruptcy court opined that the Pratts needed to prove a GMAC violation simply by a preponderance of the evidence, rather than by clear and convincing evidence, citing our decision in Fleet Mortgage Group, Inc. v. Kaneb, 196 F.3d 265 (1st Cir. 1999). Pratt, 324 B.R. at 5. As the bankruptcy court ultimately found no violation under either standard, however, it did not resolve the issue. Id. Since the bankruptcy court decision on the liability issue must be reversed, the burden of proof issue is before us on appeal.

Kaneb did not speak to the question whether a bankruptcy debtor must prove an alleged violation of the automatic stay (or by analogy, of the discharge injunction) by the heightened evidentiary

promise to arrange to have the vehicle junked.

-14-

standard of clear and convincing evidence, which is normally required to establish civil contempt outside of the bankruptcy context. Rather, Kaneb involved a related but distinct issue: namely, what facts must a debtor adduce to prove a violation. We rejected the proposition that a stay violation could not be actionable (viz., "willful") if the creditor had made a good faith mistake, and we held that "the standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Kaneb, 196 F.3d at 265. By contrast, the distinction presently at issue – between preponderance of the evidence and clear and convincing evidence – entails the quantum of proof; viz., how much of this factual evidence of knowledge and general intent – the debtor must adduce to survive a "sufficiency of the evidence" challenge. See Lamphere v. Brown Univ., 798 F.2d 532, 536 (1st Cir. 1986) (defining "clear and convincing" as more than a preponderance but less than beyond a reasonable doubt).

Given the present record, we need not now address or determine the quantum-of-evidence issue. Compare, e.g., In re Dunn, 324 B.R. 175, 179 (D. Mass. 2005) (holding that § 105 contempt action triggers "clear and convincing" standard); In re Parker, 334 B.R. 529, 538 (Bankr. D. Mass. 2005) (same); In re Feldmeier, 335 B.R. 807, 811-12 (Bankr. D. Or. 2005) (same), with In re Silberkraus, 253 B.R. 890, 913-14 (Bankr. C.D. Cal. 2000)

(holding that § 105 contains no evidence of a "clear and convincing" requirement), aff'd, 336 F.3d 864 (9th Cir. 2003). Whichever the appropriate evidentiary standard, GMAC has not suggested – nor could it plausibly do so on these record facts – that it did not know of the existence of the Pratts' chapter 7 discharge, or that it did not intend to communicate to the Pratts its refusal to release its lien in the automobile so that it could be junked.  Given the clarity of the present record as to both the "notice" and "general intent" elements, therefore, we conclude that the Pratts adduced sufficient evidence that GMAC's violation of the discharge injunction was "willful."

## C.    Damages

Finally, the parties are in agreement that the bankruptcy court was to determine the issue as to whether GMAC violated the discharge injunction prior to determining damages.  As the damages issue remains extant for factual determination, we remand to the bankruptcy court for that purpose.

**The judgment of the district court affirming the bankruptcy court decision is hereby reversed, and the case is remanded to the bankruptcy court for the determination of damages**.  SO ORDERED.