**Ralph G. CANNING, III, and Megan L. Canning, f/k/a Megan L. Otis, Debtors.**

**Ralph G. Canning, III, and Megan L. Canning, Plaintiffs–Appellants,**

v.

**Beneficial Maine, Inc., HSBC Mortgage Services, Inc., and HSBC Mortgage Corporation, Defendants–Appellees.**

**BAP No. EP 11–034.**
**Bankruptcy No. 09–20263–JBH.**
**Adversary No. 09–02080–JBH.**

United States Bankruptcy Appellate Panel of the First Circuit.

Dec. 12, 2011.

James F. Molleur, Esq., and Tanya Sambatakos, Esq., Biddeford, ME, on brief for Appellants.

Peter J. Haley, Esq., and Sean R. Higgins, Esq., Boston, MA, on brief for Appellees.

Before FEENEY, TESTER, and HOFFMAN, United States Bankruptcy Appellate Panel Judges.

TESTER, Bankruptcy Judge.

The debtors, Ralph G. Canning, III and Megan L. Canning (collectively "the Cannings"), appeal from a bankruptcy court judgment holding that Beneficial Maine, Inc., HSBC Mortgage Services, Inc., and HSBC Mortgage Corporation (collectively "Beneficial")[1] did not violate the discharge injunction by refusing to foreclose or release its mortgage lien on the Cannings' residence. For the reasons set forth below, the judgment of the bankruptcy court is **AFFIRMED**.

### BACKGROUND[2]

On May 23, 2007, the Cannings granted Beneficial a mortgage on their residence located at 12 Bougie Lane, Sanford, Maine ("the Property") to secure a loan for the purchase price. At the time of the transaction, the Property's fair market value was $195,000.00. Approximately one year later, when the Cannings attempted to refinance, the value of the Property had declined and their application was denied. Shortly thereafter, they defaulted under the terms of the original loan, and Beneficial commenced foreclosure proceedings. The Cannings ultimately filed a petition for chapter 7 relief on March 5, 2009.

In their bankruptcy schedules, the Cannings listed the Property's value as $130,000.00, based on an "informal opinion" they had received in mid–2008. Beneficial's appraisal indicated that the Property was worth $86,000.00 as of the filing date. With their petition, the Cannings filed a statement of intention indicating that they would surrender the Property and confirmed that intent via a letter to Beneficial. The bankruptcy court docket reflects that on April 6, 2009, the chapter 7 trustee filed a notice of abandonment of the Property.[3] On May 20, 2009, Benefi-

---

1. The parties do not dispute that Beneficial is the mortgagee. Because the underlying loan documents are not part of the record, however, it is impossible to confirm the exact parties to the original loan transaction.

2. The parties stipulated to the following facts in the Stipulation, defined below. *See also*

*Canning v. Beneficial Maine, Inc. (In re Canning),* 442 B.R. 165 (Bankr.D.Me.2011).

3. Although the parties did not include the docket of the main case or any pleading contained therein in the record, "the Panel may take judicial notice of the proceedings in the

cial filed a Notice to Dismiss Without Prejudice in the state court foreclosure action explaining it was "due to the [Debtors] filing chapter 7 Bankruptcy."[4]

The Cannings received their bankruptcy discharge on June 3, 2009. In August 2009, Beneficial wrote to the Cannings indicating that "[p]er the terms of your Loan Agreement, you still have a financial obligation to repay HSBC for the money that was borrowed. This financial obligation to repay HSBC ... remains intact, and HSBC reserves all rights and remedies under the terms of your Agreement. . . ." (the "August Letter").

In their responsive letter, the Cannings reminded Beneficial of their discharge, demanded that Beneficial either foreclose or discharge the mortgage, and warned that the failure to act within ten days would "result in further violation of the discharge injunction." Beneficial failed to respond and on October 1, 2009, the Cannings wrote a letter demanding that Beneficial promptly execute an enclosed discharge of mortgage failing which they would seek remedies in the bankruptcy court for violations of the discharge injunction.

Beneficial responded by letter dated October 19, 2009 (the "October Letter"), indicating that "there is still a lien balance that will need to be satisfied ... in the amount of $186,324.18." Beneficial explained that it would consider a settlement option or a short sale. It also explained that "Mr. and Mrs. Canning's [sic] account was charged off on June 27, 2009." Bene-

ficial cautioned that it was not attempting to collect from the Cannings personally.

On November 6, 2009, the Cannings' attorney wrote to Beneficial explaining that the October Letter "further violates the discharge injunction by refusing to either release the lien or foreclose" and that absent such action, he would file an adversary proceeding at the bankruptcy court. On November 13, 2009, Beneficial responded that it would not release the lien until the $186,324.18 balance was satisfied but that it would consider settlement options or a short sale (the "November Letter"). In response, the Cannings wrote to Beneficial advising that they had vacated the Property, turned off the utilities and notified "the Town of Sanford as well as the Sanford Sewerage and Sanford Water companies ... that [Beneficial was] the responsible party" for the Property.

Thereafter, the Cannings reopened their bankruptcy case and commenced an adversary proceeding against Beneficial. The Cannings did not set forth separate counts in their complaint but alleged that by "failure or refusal to commence foreclose or otherwise recover possession of the Property and [its] repeated efforts to coerce payment from the Debtors," Beneficial violated §§ 524[5] and 105 and acted in "reckless disregard of ... the decision of the First Circuit Court of Appeals in" *Pratt v. General Motors Acceptance Corp. (In re Pratt)*, 462 F.3d 14 (1st Cir.2006). The Cannings sought actual and punitive damages and "to the extent necessary, declaratory relief ordering [Beneficial] to either recover possession of the Property or de-

---

bankruptcy court." *Aja v. Emigrant Funding Corp. (In re Aja)*, 442 B.R. 857, 861 n. 7 (1st Cir. BAP 2011).

**4.** In the Memorandum of Decision, the bankruptcy court recognized that this proceeding had been stayed during the bankruptcy proceeding.

**5.** Unless otherwise indicated, the terms "Bankruptcy Code," "section" and "§ " refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, 119 Stat. 37.

liver unencumbered title to said Property to the Plaintiffs." Beneficial filed an answer to the complaint, essentially denying all material allegations and setting forth nine affirmative defenses, most notably, lack of intent to violate the discharge order. The appraisal Beneficial received at the time that the Cannings filed the complaint indicated that the value of the Property had declined to $75,000.00.

The parties agreed to submit the issue of liability via their "Stipulations and Exhibits" ("Stipulation") and legal memoranda and,[6] in the event the bankruptcy court ruled in the Cannings' favor, to reserve evidence and arguments regarding sanctions for a later hearing. In the Stipulation, the parties presented nothing in addition to the foregoing facts. In their memorandum addressing liability, the Cannings explained that because the facts in their case mirrored those in *In re Pratt, supra,* the same outcome was necessary.[7] In particular, the Cannings offered that the court could infer that Beneficial did not foreclose on the Property because it was not cost effective to do so and find that they were "still the owners of a vacant albatross for which they are exposed to liability with no resolution forthcoming." Beneficial countered that the facts in this case were distinguishable from *Pratt* because the Property had some value and that amount could increase, particularly as little time had elapsed since the discharge.

In its Memorandum of Decision dated February 17, 2011, the bankruptcy court concluded that the August Letter, and Beneficial's "stance in the weeks thereafter, plainly qualifie[d] as an 'act to collect, offset, or recover' a discharged debt, *viz* the Cannings discharged personal obligation to repay their mortgage loan." *In re Canning,* 442 B.R. at 171. The bankruptcy court further concluded that Beneficial "did not, however, violate the discharge injunction by failing to foreclose upon or release its mortgage on valuable real estate at the Cannings' post-discharge insistence." *Id.* at 172. The bankruptcy court specifically found that Beneficial's "refusal to act in response to the Cannings' ultimatum of 'foreclose or release' neither operated to coerce the Cannings to pay in full, nor did it frustrate their § 521(a)(2) surrender rights." *Id.* With respect to *In re Pratt,* the court wrote:

> The analogy to Pratt is rough. The Cannings' argument neglects telling points that distinguish the two cases. Though HSBC is undersecured, its collateral is real estate, not personal property. The Cannings' demand of "foreclose or release, now" ignores the prospect that real estate values change (up, as well as down) over time. A critical component of *Pratt's* holding was the collateral's worthlessness and the fact that, unlike real estate, "vehicles rarely appreciate in value over time." *Id.* Moreover, unlike the Pratts' secured creditor, HSBC did not simply require that the Cannings "pay in full." Rather it responded by suggesting either a voluntary settlement or a "short sale." That invitation plainly reveals

---

6. Although the Cannings did not include the trial court memoranda in their appendix, they did designate them as part of the record. *See* Fed. R.App. P. 30.

7. In their memorandum, the Cannings argued that a "creditor who continuously demands payment and refuses to accept a valid surren-

der by refusing to foreclose or release its lien violates 11 U.S.C. § 524. In this case, the Defendants['] actions have had the practical effect of eliminating the Cannings' right to surrender the property and have prevented them from achieving the fresh start ..."

that HSBC sought to collect no more than the value securing its lien.

*Id.*[8]

Thereafter, the bankruptcy court held an evidentiary hearing on sanctions. Mrs. Canning testified that the Cannings had moved out of the Property because they could not afford the mortgage payments and because they thought Beneficial was going to foreclose. She explained that she experienced stress because she was unable "to just walk away" from the Property. The only other person to testify, a conflict resolution analyst for Beneficial, explained that Beneficial did not proceed to foreclosure because "the value did not warrant [going] forward with the expense that would be related to it." As a result, she explained: "They charged it off. They did a walk."

At the conclusion of the hearing, the bankruptcy judge first explained that he had determined liability earlier and stood by the decision that there was liability as to the letters but not with respect to the failure to foreclose or release the lien. "[F]or the discharge violation and the two months which were left outstanding," the bankruptcy court ordered $5,000.00 in compensatory sanctions and $2,000.00 in legal fees. On May 5, 2011, the bankruptcy court entered a final judgment memorializing the amount of the sanctions.

The Cannings filed a timely notice of appeal, challenging the conclusions that Beneficial's refusal to discharge or foreclose on its mortgage lien did not constitute a violation of the discharge injunction. In their briefs, the Cannings rely exclusively on *In re Pratt, supra,* to support their contention that Beneficial's conduct effectively "eradicated" their right to surrender and "indefinitely [kept] them from

achieving their fresh start." At oral argument, the Cannings maintained that Beneficial's refusal to take possession of the Property interfered with their fresh start by forcing them to expend sums to secure the Property against vandalism and vagrants, and has caused them emotional turmoil. They further explained that the fact that they "continue to be burdened with something they surrendered" was tantamount to coercion to pay a discharged debt, in violation of *Pratt.* In its brief, Beneficial countered that *Pratt* is inapposite, and further, that "Neither the [B]ankruptcy [C]ode nor *Pratt* obligate[ ] Beneficial to simply walk away from real property with substantial value."

### *JURISDICTION*

■ Before addressing the merits of an appeal, we must determine whether we have jurisdiction, even if the litigants do not raise the issue. *In re Aja,* 442 B.R. at 860 (citation omitted). We have jurisdiction to hear appeals from: (1) final judgments, orders and decrees; or (2) with leave of court, from certain interlocutory orders. *Id.* (citing 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.),* 218 B.R. 643, 645 (1st Cir. BAP 1998)). Determinations as to a violation of the discharge injunction are final orders. *Beal Bank, SSB v. Prince (In re Prince),* Nos. 108–0146, 108–0164, 2008 WL 4498948, at *3 (Bankr.M.D.Tenn. Aug. 19, 2008); *In re Price,* 383 B.R. 411, 413 (Bankr.N.D.Ohio 2007). It follows that we have jurisdiction to hear the instant appeal.

### *STANDARD OF REVIEW*

■ A bankruptcy court's findings of fact are reviewed for clear error and its

---

**8.** The bankruptcy court also noted that while the result of its ruling might be that the Cannings would have the continuing obligations of real estate taxes, maintenance, and/or liability insurance, those were incidents of ownership not subject to discharge.

conclusions of law are reviewed *de novo*. *See Lessard v. Wilton–Lyndeborough Coop. School Dist.*, 592 F.3d 267, 269 (1st Cir.2010); *see also Ford Motor Credit Co. LLC v. Morton (In re Morton)*, 410 B.R. 556, 559 (6th Cir. BAP 2009) (holding that a "bankruptcy court's interpretation of [ ] § 524 is reviewed *de novo* ").

## DISCUSSION

The Cannings brought their complaint under §§ 105 and 524(a)(2) to seek redress for Beneficial's alleged violation of the discharge injunction based upon the August, October, and November Letters and based upon the failure of Beneficial to foreclose upon or discharge its mortgage on the Property. They sought damages and, if necessary, an order requiring Beneficial to either recover possession of the Property or discharge its mortgage. The Cannings explain that the issues on appeal are: (1) whether Beneficial violated the discharge injunction by refusing to foreclose or otherwise take possession or discharge its mortgage post-surrender; and (2) if Beneficial violated the discharge, what damages are they due.

■ The duties of the debtor upon filing are set forth in § 521. Subsection (a)(2)(A) provides that, within 30 days after filing relief, a debtor owing a debt secured by property must file a statement indicating whether the debtor will reaffirm the debt or redeem or surrender the collateral. The First Circuit has explained that surrender in this context does not require a secured creditor to accept possession or to foreclose or repossess, rather the term means that the debtor agrees "to make the collateral *available* " to the secured creditor. *In re Pratt*, 462 F.3d at 19; *see also In re Cormier*, 434 B.R. 222, 232 (Bankr.D.Mass.2010) (citing *In re Pratt* and explaining "in the usual case, a creditor can treat surrendered property according to its discretion, as long as it acts consistent with its security agreement and non-bankruptcy law.").

■ When a debtor thereafter receives a discharge, or fresh start, the debtor is relieved of *in personam* liability for the unsecured portion of the secured creditor's claim. *In re Pratt*, 462 F.3d at 17 (stating that the purpose of discharge "is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged pre-petition debts."); *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 21 (1st Cir.2002) (citation omitted). The lien, however, survives the discharge and the secured creditor retains *in rem* rights which it may exercise in accordance with applicable state law. *Arruda*, 310 F.3d at 21; *see also Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) ("Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its right to the proceeds from the sale of the debtor's property."). The discharge order itself "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).

■ Section 105(a) provides a bankruptcy court with authority to enforce the discharge injunction and to order damages in case of a violation of the injunction. *In re Pratt*, 462 F.3d at 17. Sanctions for violation of the discharge injunction are in the nature of civil contempt. *In re Schlichtmann*, 375 B.R. 41, 94 (Bankr. D.Mass.2007). The First Circuit has warned that courts should exercise the contempt power cautiously, however, in light of its "virility and damage potential."

*Project B.A.S.I.C. v. Kemp,* 947 F.2d 11, 16 (1st Cir.1991).

The foregoing parameters are set forth in *In re Pratt,* which the Cannings contend commands a ruling in their favor. In Pratt, the debtors filed suit against their secured lender because in the more than four years after their discharge, the lender had not repossessed or released the lien it held on an inoperable ten-year-old car the debtors had surrendered and wanted to deliver to a junk dealer. *In re Pratt,* 462 F.3d at 16. Pursuant to a state statute, the dealer could not accept the vehicle without a lien release. *Id.* In its decision, the First Circuit concluded first that the term "surrender" found in § 521(a)(2) required a debtor to make collateral *"available;"* it did not require a secured creditor to take possession. *Id.* at 19 ("Thus we agree ... that the Pratts' surrender did not require that [the secured creditor] repossess the vehicle if [the secured creditor] deemed such repossession cost ineffective."). The court then explained that the "more difficult question is whether the 'surrender' provision required that [the secured creditor] release its lien." *Id.* Ultimately, the First Circuit concluded that by refusing to release its lien on a worthless vehicle, the creditor was objectively coercing the debtors to reaffirm the debt and violating the discharge injunction. *Id.* ("Thus, even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction ...").

Rather than prescribe a formula to determine coercion, the First Circuit explained that an assessment of whether the secured creditor's refusal to release its lien was "objectively and improperly 'coercive'" must be based upon "the context of [the] particular facts." *Id.* ("Although the bankruptcy court aptly noted that this precise situation is likely to arise infrequently

(if ever) in future cases, the 'coerciveness' involved in each case must be assessed on its particular facts."). The court then highlighted five facts it considered material. They included: (i) the debtors had timely filed a notice of surrender; (ii) the debtors did nothing to prevent the secured creditor from taking possession of the vehicle; (iii) the value of the vehicle had plummeted such that the debtors had to junk it; (iv) the secured creditor had determined that it was not cost effective to repossess and sell the vehicle; and (v) the debtors could not junk the vehicle because the secured creditor had not released the lien. The First Circuit concluded that the confluence of foregoing facts constituted coercion because: (i) the secured creditor conditioned the release of lien on the debtors' agreement to repay the debt in full; and (ii) without being able to junk the vehicle, the debtors were required indefinitely to possess, maintain, insure, and/or garage a worthless asset.

While the First Circuit did not allocate the weight it assigned each of these facts, it emphasized the presence of value would be the fact with the potential to legitimize a creditor's conduct and although it described the value of the car using a variety of terms, one thing was clear: there was no reasonable prospect that the vehicle would ever increase in value. As a result "the legitimate *raison d'etre* for the [secured creditor's] lien no longer obtained and the federal bankruptcy law interest in according debtors a fresh start, free from objectively coercive reaffirmation demands, must be accorded supremacy." *Id.* at 20. The First Circuit explicitly admonished that its ruling was limited: "We do not suggest that a secured creditor invariably would be in violation of the discharge injunction were it to insist upon its *in rem* rights under state law." *Id.*

Post-*Pratt*, other courts have reiterated the principle that where the collateral has value, the creditor's "desire to enforce its rights in the collateral suffices to explain [its] actions." *In re Schlichtmann*, 375 B.R. at 98. Where there is value, "the creditor's facially permissible actions with respect to the collateral are not undercut by the evident lack of any legitimate economic purpose," and consequently, there is no violation of the discharge injunction. *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1309 (10th Cir.2008) (holding that continuation of state court litigation against debtor's business did not violate discharge injunction).

 It follows from *Pratt* that after the Cannings surrendered the Property, Beneficial was not required to take possession.[9] Thus, the bankruptcy court correctly concluded that Beneficial did not violate the discharge injunction when it refused to foreclose. The surviving and, according to *Pratt*, "more difficult question," is whether Beneficial improperly failed to discharge its mortgage. *In re Pratt*, 462 F.3d at 19.

 As the First Circuit explained, the bankruptcy court was charged with assessing this question in the context of the particular facts and the Panel must determine whether the bankruptcy court's findings were clearly erroneous. In this case, the record is clear that the Cannings gave timely notice of the surrender of the Prop-

erty and did nothing to prevent Beneficial from taking possession. With respect to the additional facts the *Pratt* court considered material, the bankruptcy court explained that: (i) unlike in *Pratt*, the collateral in this case is real estate, whose value was $75,000.00 and could change up, as well as down;[10] and (ii) Beneficial did not simply seek payment in full but offered alternatives indicating that it sought to be paid "no more than the value securing its lien." There is nothing in the record to indicate that these findings were clearly erroneous.

The Cannings argue that Beneficial's withdrawal of its complaint for foreclosure because it was not cost effective must be given great weight. They contend that in *Pratt*, the First Circuit gave greater emphasis to this fact than to the actual value of the collateral. Unfortunately, in this case, the evidence before the bankruptcy court regarding the withdrawal of the complaint was not as clear as the Cannings describe and the varied references the *Pratt* court made with respect to the value of the car and the cost effectiveness do not inform our decision.

When the bankruptcy court issued the Memorandum of Decision, the Stipulation and memoranda reflected that the Property was worth $75,000.00, Beneficial had filed a notice to dismiss the foreclosure "due to the [Cannings] filing [c]hapter 7

---

9. "Maine follows the title theory of mortgages." *Johnson v. McNeil*, 800 A.2d 702, 704 (Me.2002). "Nevertheless, the mortgagee is not, in a general sense the owner of the mortgaged estate before foreclosure.... As to the rest of the world, the entire estate is in the mortgagor." *Pettengill v. Turo*, 159 Me. 350, 193 A.2d 367, 373 (1963); *cf. In re Cormier*, 434 B.R. 222, 228 (Bankr.D.Mass.2010) (describing the same status based upon the law in Massachusetts, a title theory state). There are no statutory deadlines regarding the enforcement of a mortgage other than a statutory procedure for limiting the enforcement of

the mortgage provisions. *See* M.R.S.A. § 6104.

10. Again, the *Pratt* court explained that the debtors wanted to junk the vehicle because of the plummeting value and deteriorating condition. The Cannings contend this fact is analogous to their situation. There was nothing in the record when the bankruptcy judge considered liability, however, that connected the decline in value with why the Cannings gave up possession of the Property.

bankruptcy," and Beneficial had "charged off" its account. In the Stipulation, the Cannings asked that the court infer that the reason Beneficial cancelled its foreclosure proceeding was because it was not cost effective. It was only after the court rendered its decision on liability that Beneficial's employee testified to that effect at the hearing on sanctions. The Cannings did not request the bankruptcy court to reconsider its initial ruling based on this testimony. *Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 42 (1st Cir.1994) (explaining judge can reconsider interlocutory ruling at any time before final order). There is no authority to suggest that the bankruptcy judge was required to comb through the testimony at the evidentiary hearing to consider its impact on his earlier ruling.

Moreover, while the *Pratt* court did consider whether a repossession was cost ineffective as a reference to value, it also made several additional references in the opinion as to how it viewed the value of the collateral. The court alternatively described the car's value as "essentially worthless" or "worthless," and had "no significant value" or "insufficient value." The court also referenced the reasonable prospect of future sale proceeds.[11]

Accordingly, with respect to this fact upon which the Cannings place great emphasis, whether Beneficial cancelled the foreclosure proceeding due to cost, there was insufficient information before the bankruptcy court to make this determination and the bankruptcy court did not give this fact great weight. Instead, the court determined that rather than being worthless or having insufficient value, the Property had significant value. Based upon *Schlichtmann* and *Paul,* a finding of sig-

nificant value is sufficient to justify Beneficial's refusal to discharge its mortgage.

In addition to the foregoing facts, the *Pratt* court also found persuasive that if the debtors could not junk the vehicle, they would be required indefinitely to possess, maintain, insure, and/or garage a worthless asset. In the Memorandum of Decision, the bankruptcy court suggested that the Cannings might have expenses attendant with continuing ownership. There is nothing in the record, however, to evidence any expenses related to their equitable ownership other than the Cannings' reference in their brief to being exposed to liability. In their appellate brief and at oral argument, the Cannings suggest that costs for which they are or could be liable relate to the stress of continuing their equitable ownership and the potential liability should someone suffer an injury after trespassing onto the Property. Again, however, there is nothing in the record to support these alleged expenses and we cannot make findings regarding the same.

We are also mindful that § 524(a) "is not a license for courts to go beyond the particular prohibitions specified in the statute to shield debtors from adverse contingencies." *In re Paul,* 534 F.3d at 1307 ("[D]ischarged debtors are not broadly free from any inconvenience and expense that otherwise permissible [post-discharge] litigation may impose on them."); *see also Jamo v. Katahdin Federal Credit Union (In re Jamo),* 283 F.3d 392, 400 (1st Cir. 2002) ("[A] Chapter 7 debtor is not inoculated against the necessity for making hard choices; it is a benefit that comes with certain costs."); *Ogunfiditimi v. Deutsche Bank Nat'l Trust Co. (In re Ogunfiditimi),* No. 11–0282, 2011 WL

---

11. At oral argument, the Cannings suggested that they could meet these standards as the value is now negligible given subsequent events but, as the First Circuit has explained,

"[i]t is elementary that evidence cannot be submitted for the first time on appeal." *United States v. Rosario–Peralta,* 175 F.3d 48, 56 (1st Cir.1999).

2652371 (Bankr.D.Md. July 6, 2011) ("... the court is without authority to compel the Bank to exercise its foreclosure rights.").

While the bankruptcy court did not frame the facts in the same manner as the First Circuit framed them in *Pratt*, the court relied on the principal ones and the findings with respect to those were not clearly erroneous.[12] Moreover and as outlined above, a comparison of the limited facts in the record with those which the First Circuit found material does not assist the Cannings on appeal; they simply did not adduce sufficient facts at the trial level to put this case four-square with *Pratt*. Unlike *Pratt*, the record reflects that the Property had significant value, that Beneficial did not suggest it would discharge the mortgage only upon the full payment of the loan, and that the Cannings were not incurring any attendant costs. Based upon the facts presented to and considered by the bankruptcy court, we cannot conclude that there was a particular confluence of circumstances that renders Beneficial's refusal to discharge its mortgage tantamount to coercing the payment of a discharged prepetition debt.

### CONCLUSION

Based on the foregoing, the bankruptcy court correctly concluded that Beneficial's refusal to foreclose or discharge its mortgage did not violate the discharge injunction. Accordingly, the judgment of the bankruptcy court is **AFFIRMED**.

---

12. We again note that the First Circuit relied upon a list of facts, not factors, and explained that the analysis must depend upon the context of the particular facts.