**In re Robert Douglas WHITE, Debtor.**

**No. 02–50035.**

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

Aug. 2, 2002.

Robert M. Whittington, Jr., Akron, OH, for debtor.

Jerome L. Holub, Akron, OH, trustee.

### ORDER SUSTAINING IN PART AND OVERRULING IN PART THE OBJECTION OF THE SUMMIT COUNTY TREASURER TO THE DEBTOR'S CHAPTER 13 PLAN OF ARRANGEMENT

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter came on for hearing on March 7, 2002 on the Summit County Treasurer's (the "Treasurer") Objection to the Debtor's Chapter 13 Plan of Arrangement, filed on February 15, 2002, the Debtor's Objection to the Allowance of the Claim and Response to Objection to Confirmation, filed on February 19, 2002, and the Response to the Debtor's Objection, filed on February 26, 2002. Participating at the hearing were Robert M. Whittington, counsel for the Debtor, and Susan Poulos Gates, counsel for the Treasurer. Following the hearing the Court issued an Order on April 8, 2002 requiring further briefing to be filed with the Court. The required briefing included the Treasurer's Brief on the Effects of Ohio Rev.Code §§ 323.25, 5721.32 and 5721.33 and the Claims of Heartwood 88, filed on April 29, 2002, the Debtor's Response, filed on May 6, 2002, and a Joint Stipulation of Facts, filed on April 17, 2002.

This matter concerning confirmation of a chapter 13 case and the surrender of property to a secured creditor constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (L) over which this Court has jurisdiction pursuant to 28 U.S.C. §§ 151 and 157(a) and (b)(1) and by the Standing Order of Reference entered in this District on July 16, 1984.

### I. STIPULATIONS AND UNDISPUTED FACTS

The parties filed the following stipulations on April 17, 2002:

1. This case was commenced as a case under chapter 13, title 11 U.S.C. on January 4, 2002.

2. The Debtor owns, in fee simple absolute, a parcel of real estate located at 52½ E. Emerling Street, Akron, Ohio. This real estate is known as parcel 68–45235.

3. The Debtor is delinquent in his real estate taxes owed to the Treasurer on this parcel.

4. In 1999 the Treasurer sold, pursuant to Ohio Rev.Code § 5721.33, a tax certificate for taxes that were delinquent through the year of 1998 to an entity known as Heartwood 88. This entity has not filed a proof of

claim, but is not barred from doing so until after May 7, 2002.

5. The Treasurer has filed a proof of claim for delinquent real estate taxes owed by the debtor with respect to this parcel for the year 1999, 2000 and the first half of 2001 in the amount of $472.97. This proof of claim indicates that the Treasurer claims to hold a security interest in this real estate. [Proof of Claim # 3].

6. The Debtor's chapter 13 plan provides for the surrender of this real estate to the Treasurer. Specifically the plan provides "John Donofrio, Summit County Treasurer, shall sell according to law the real estate of the debtor located at 52½ E. Emerling Street, Akron, Ohio in strict foreclosure and shall not be paid either by the chapter 13 trustee or by the debtor..."

The following fact is also undisputed: Heartwood 88 filed a Proof of Claim on May 7, 2002 stating it had a secured claim in the amount of $2,810.07 as of May 2, 2002 for "Tax year(s) previous to certificate year" and listing the certificate year as "Cert Year 1999."[1]

In paragraph (h) of his plan the Debtor directs the Treasurer to sell the real estate "in strict foreclosure." *See* Stipulation # 6. The Treasurer objected to that provision stating that the "Debtor cannot direct a governmental entity to sell his property," and that, in any event, "in 1999 Heartwood 88 purchased the delinquent tax lien certificate" on the property. In addition, the Treasurer asserts that without his consent to the surrender of the property the Debtor's plan cannot be confirmed. The Debtor notes that one method by which chapter 13 debtors may deal with the claims of secured creditors is to surrender the property to the lienholder. "Section 1325(a)(5)(C) of the Bankruptcy Code provides that a bankruptcy court **shall** confirm a chapter 13 plan if, with respect to each allowed secured claim provided for by the plan, the debtor surrenders that property securing such claim to such holder." May 6th Reply of Debtor at 1 (emphasis in original). In addition, the Debtor alleges that the secured creditor's consent to surrender is not necessary pursuant to § 1325(a)(5)(C).

## II. ANALYSIS

### A. Ohio Revised Code § 323.25

Ohio Rev.Code § 323.25 states in pertinent part:

When taxes charged against an entry on the tax duplicate ... are not paid within sixty days after delivery of the delinquent land duplicate to the county treasurer as prescribed by section 5721.011 [5721.01.1] of the Revised Code, the county treasurer shall enforce the lien for such taxes by civil action in the treasurer's official capacity as treasurer, for the sale of such premises, in the court of common pleas of the county in the same way mortgage liens are enforced.... The treasurer shall not enforce the lien for taxes against real property to which any of the following applies:

...

(C) A tax certificate respecting that property has been sold under section

---

**1.** In this case there are two secured creditors whose claims are secured by the same property. Both are the result of unpaid real estate taxes. Heartwood 88 acquired its claim by purchase from the County Treasurer, so the claimants are not strangers to one another. In short, this case does not present the question of surrender of property securing completely independent claims.

5721.32 or 5721.33 of the Revised Code; provided, however, that nothing in this division shall prohibit the county treasurer or the county prosecuting attorney from enforcing the lien of the state and its political subdivisions for taxes against a certificate parcel with respect to any or all of such taxes that at the time of enforcement of such lien are not the subject of a tax certificate.

■ By statute the county treasurer is directed to enforce the county's lien for delinquent taxes, except when a certificate has been sold pursuant to statute. However, the treasurer is not prohibited from initiating a foreclosure action for taxes remaining unpaid subsequent to those earlier taxes which are the subject of sold tax certificates. That is the situation in this case. The taxes claimed in the Treasurer's proof of claim are those for 1999, 2000 and the first half of 2001. Heartland 88 purchased the tax certificate for the year 1998. The Treasurer, in his brief of April 29th acknowledges that this is so, but states "[w]here subsequent taxes remain unpaid, initiation of foreclosure by the treasurer does not appear to be mandatory." Brief of April 29th at 3. The Treasurer cites no case law or Ohio statute which overrides the mandatory language of § 323.25 in a case where subsequent taxes remain unpaid. Instead the Treasurer states that where "a senior certificate is outstanding, the county typically would not initiate foreclosure unless directed by the certificate holder. This is due to the cost involved . . . [and] the out-of-pocket cost to the county is between $1,500 and $2,000." Brief of April 29th at 3.

However, the statute speaks for itself. Section 323.25 states that the Treasurer **shall** enforce the lien unless certain conditions apply. Those conditions include the sale of a tax certificate but § 323.25(C) also spells out that **"nothing in this sec-tion shall prohibit the county treasurer or the county prosecuting attorney from enforcing the lien of the state and its political subdivisions for taxes against a certificate parcel with respect to any or all of such taxes that at the time of enforcement of such lien are not the subject of a tax certificate."** The statute directs the county treasurer or the county prosecuting attorney to enforce the lien and does not state that for taxes subsequent to those for which a tax certificate was sold the county treasurer is directed not to enforce the lien. Pursuant to the directive of the statute itself, the Treasurer or the county prosecuting attorney must enforce the lien.

■ To the extent that the Debtor's directive in paragraph (h) of his plan addresses what might happen to the property after the surrender by the Debtor, such language does not bind the Treasurer. The Debtor is surrendering the property, and the Treasurer presumably then will act in accordance with his statutorily created duties. The Treasurer's objection to the semantics or post-surrender surplusage in paragraph (h) is sustained.

**B. Section 1325(a)(5)(C) of the Bankruptcy Code**

Section 1325(a)(5)(C) reads as follows:
Except as provided in subsection (b), the court shall confirm a plan if—

. . .

(5) with respect to each allowed secured claim provided for by the plan—

. . .

(c) the debtor surrenders the property securing such claim to such holder. . .

■ The term "surrender" is defined as "yield, render up," Black's Law Dictionary 1444 (6th ed.1990), and the word as generally defined may denote either compelled or voluntary action. *Keppel v. Tiffin Sav.*

*Bank,* 197 U.S. 356, 362, 25 S.Ct. 443, 49 L.Ed. 790 (1905). In *In re Robertson,* 72 B.R. 2, 4 (Bankr.D.Colo.1985) the Court stated that "it would clearly appear that Congress contemplated the term to mean return and relinquishing of possession or control to the holder of a claim." This definition is useful but does not expressly cover all the scenarios in which holders of claims have lien rights. In the context of a non-purchase money lien securing a claim for money in a chapter 13 case, there is no issue of "return" of the collateral to the holder of the secured claim. Surrender in that context is perhaps best viewed as the relinquishing of any legal claim of the debtor and, once the plan is confirmed, of the debtor's bankruptcy estate to the collateral. It functions as both the debtor's consent to relief from stay and with respect to real property and personal property that is subject to certificates of title, estoppel of the right to defend in any foreclosure proceeding or a prospective confession of judgment in any such case.

The Debtor asserts that he has the right under the Code to surrender the property securing a claim to the holder of the claim. The Treasurer asserts that the surrender is ineffectual unless he consents to the Debtor's actions.[2]

"No court has held that § 1325(a)(5)(C) requires consent of the secured creditor to be effectual, and a number of appellate courts, including the United States Supreme Court, have, albeit in passing, recognized this provision without indicating the consent of the secured creditor was a necessary component." *In re Harris,* 244 B.R. 556, 557 (Bankr.D.Conn.2000)(citing *Associates Commercial Corp. v. Rash,* 520 U.S. 953,

117 S.Ct. 1879, 138 L.Ed.2d 148 (1997))("If a secured creditor does not accept a debtor's Chapter 13 Plan, the debtor . . . [may] surrender the collateral to the creditor."); *Williams v. Tower Loan of Mississippi, Inc.,* 168 F.3d 845, 847 (5th Cir.1999)(Section 1325(a)(5)(C) gives a Chapter 13 debtor the option of adopting its provision.).

The Court in *Williams* quotes *Collier's:*

A chapter 13 plan otherwise meeting all of the confirmation standards and requirements must be confirmed if it satisfies any one of three alternative tests with respect to each allowed claim provided for by the plan—acceptance of the plan by the holder of the claim, compliance with the chapter 13 cram down provisions, or surrender of the collateral to the holder of the claim.

. . .

A fair rendition of section 1325(a)(5)(C) requires the surrender of the collateral occur before or at confirmation . . . However, surrender in this context means simply the relinquishment of any rights in the collateral. . . . The Code is silent as to the extent to which the debtor or the court . . . may impose reasonable restrictions on the manner in which the holder of an allowed claim may dispose of collateral surrendered by the debtor under section 1325(a)(5)(C).

*Collier's on Bankruptcy,* ¶ 1325.06[2][c] and [4](15th ed. rev.1997).

In *Rash* the Court stated that "[i]f a secured creditor does not accept a debtor's Chapter 13 plan, the debtor has two options for handling allowed secured claims: surrender the collateral to the creditor, *see* § 1325(a)(5)(C), or, under the cram down option, keep the collateral over the credi-

---

**2.** The Treasurer cites to *In re Service,* 155 B.R. 512 (Bankr.E.D.Mo.1993), as support for his position. However, the facts in *Service* were different from the facts in this case.

The secured creditor was a financial institution which did not have a non-bankruptcy statutory mandate to liquidate the property.

tor's objection and provide the creditor, over the life of the plan, with the equivalent of the present value of the collateral ...." *Rash* at 961, 117 S.Ct. 1879. Chapter 13 provides for the debtor to choose the means by which the debtor satisfies its secured creditors if one or more secured creditors object to the plan. *See Williams, supra.* Chapter 13 does not provide for the secured creditor to veto a plan when the debtor complies with § 1325, especially when the creditor is fully secured or is being afforded the full value of its interest in the collateral. In addition, the Code does not provide for the court or the debtor to direct the means by which the secured creditor deals with the surrendered property.

## II. CONCLUSION

The Debtor shall file an Amended Plan removing the directive language to which the County Treasurer objects: "John Donofrio, Summit County Treasurer, shall sell according to law the real estate of the debtor located at 52½ E. Emerling Street, Akron, Ohio in strict foreclosure and shall not be paid either by the chapter 13 trustee or by the debtor as the debtor has no personal liability on this claim."

The Treasurer or the county prosecuting attorney will take the actions the Ohio legislature has stated it should. The Treasurer's objection to confirmation of the Debtor's chapter 13 plan based upon the assertion that the Treasurer must consent to such surrender is overruled.

**IT IS SO ORDERED.**