IN RE: Michael Charles HOLOKA & Joann Marlene Holoka, Debtors.

Michael Charles Holoka & Joann Marlene Holoka, Plaintiffs,

v.

Deutsche Bank National Trust Co., as Trustee for Harborview Mortgage Loan Pass Through Certificates, Series 2006–9, Defendant.

CASE NO.: 08–50016–KKS
AP NO. 14–05005

United States Bankruptcy Court,
N.D. Florida,
Panama City Division.

Signed December 22, 2014

Charles M. Wynn, Charles M. Wynn Law Offices, P.A., Marianna, FL, for Plaintiffs.

Thomas Parker Griffin, Jr., Richard K. Vann, Jr., Bradley Arant Boult Cummings LLP, Birmingham, AL, for Defendant.

### ORDER GRANTING MOTION TO DISMISS ADVERSARY PROCEEDING (DOC. 9)

KAREN K. SPECIE, United States Bankruptcy Judge

THIS MATTER is before the Court on the Motion to Dismiss Adversary Proceeding and Incorporated Memorandum of Law (the "Motion," Doc. 9), filed by the Defendant, Deutsche Bank National Trust Co., as trustee for Harborview Mortgage Loan Pass Through Certificates, Series 2006–9 ("Defendant" or "Deutsche Bank"), and Plaintiffs' Objection to Defendant's Motion to Dismiss (Doc. 13). The Court heard argument on the Motion on September 18, 2014, after which the parties filed supplemental memoranda of law (Docs.23, 24).

The underlying facts are not in dispute. Plaintiffs filed a Chapter 11 bankruptcy petition on January 15, 2008.[1] Their Second Amended Chapter 11 plan, attached to their Complaint as Exhibit I, was confirmed effective April 8, 2009 (the "Plan").[2] Their Chapter 11 case was closed on September 18, 2009, and a Discharge of Debtor(s) was entered on the same date.[3] Plaintiffs filed a Motion to Reopen Chapter 11 Case on April 23, 2014, which was granted, after which the Plaintiffs filed the

---

1. Doc. 1, at 3.

2. Doc. 1–3, Exhibit J, at 5.

3. Doc. 1–4, Exhibit L.

Complaint commencing this adversary proceeding (the "Complaint").[4]

When they filed their Chapter 11 case, the Plaintiffs owned a condominium in Santa Rosa Beach, Florida.[5] They listed the condo as having a value of $715,000,[6] and Deutsche Bank's predecessor as having a mortgage claim of $895,679.30.[7] The condo was also subject to liens for unpaid real property taxes and condominium association dues.[8] Deutsche Bank obtained stay relief to pursue its *in rem* rights by order dated May 28, 2008.[9]

Class 3 of the Plan lumped treatment of claims of three secured creditors, including Deutsche Bank, together; Adagio Community Association Inc., Deutsche Bank, and the tax collector were to be "paid and satisfied in full from the surrender of the collateral."[10] The Plan also provided that these creditors would retain their liens on the condominium,[11] that upon confirmation title to the condo would vest in the Plaintiffs "free and clear of all liens and encumbrances except as otherwise provided,"[12] and that the Plaintiffs were to retain possession of their property, including the condo.[13]

On December 20, 2012, Deutsche Bank filed suit to foreclose on the condo.[14] The Plaintiffs are contesting the foreclosure: they have filed affirmative defenses and a counterclaim against Deutsche Bank seeking, among other things, to quiet title in their favor and vacate Deutsche Bank's mortgage lien.[15] A paragraph of Deutsche Bank's foreclosure complaint contained the standard request for entry of a deficiency judgment against the Plaintiffs; Deutsche Bank later requested leave to amend its complaint to delete this language, claiming the language was included in error.[16]

*Discussion*

A court may dismiss a complaint for "failure to state a claim upon which relief may be granted."[17] To survive a motion to dismiss, the Complaint must state "sufficient factual matter[s], accepted as true, to 'state a claim to relief that is plausible on its face.'"[18] When ruling on a motion to dismiss, the court takes all well-pleaded facts as true.[19] Attachments to the complaint are considered part of the complaint for all purposes, including a Rule 12(b)(6) motion.[20] A court may also "fully resolve

---

**4.** Doc. 1; Motion to Reopen Chapter 11 Bankruptcy Case, *In re Holoka*, No. 08–50016 (Bankr.N.D.Fla. Apr. 23, 2014), ECF No. 249; Order Granting Motion to Reopen Chapter 11 Bankruptcy Case, *In re Holoka*, No. 08–50016 (Bankr.N.D. Fla. June 25, 2014), ECF No. 257.

**5.** Doc. 1, at 2; Doc. 1–2, Exhibit E, at 1.

**6.** Doc. 1–2, Exhibit E, at 1.

**7.** Doc. 1–2, Exhibit E, at 1.

**8.** Doc. 1–2, Exhibit I, at 4.

**9.** Doc. 1–2, Exhibit H, at 1–2.

**10.** Doc. 1–3, Exhibit I, at 6.

**11.** *Id.* at 9.

**12.** *Id.* at 11.

**13.** *Id.*

**14.** Doc. 1, at 4.

**15.** Doc. 13, at 3; Doc. 1–3, Exhibit K, at 1–5.

**16.** Doc. 9, at 3; Doc. 18, at 6; Doc. 21, at 10, 22.

**17.** Fed.R.Civ.P. 12(b)(6); Fed. R. Bankr.P. 7012(b).

**18.** *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

**19.** *Id.* at 679, 129 S.Ct. 1937.

**20.** *Solis–Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir.1985).

any purely legal question."[21] Based on the undisputed facts, the Defendant's Motion to Dismiss should be granted.

I. *The portions of the Complaint seeking relief for alleged damages due to a failure to foreclose or foreclose "timely" should be dismissed.*

■ Section 524(a)(2) of the Bankruptcy Code provides, in pertinent part, that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action ... to collect, recover or offset any such debt as a personal liability of the debtor...."[22] In this adversary proceeding, the Plaintiffs seek actual damages, compensatory damages, statutory damages, punitive damages, attorney's fees, and cancelation of the mortgage as "redress" for Deutsche Bank's alleged violation of the discharge injunction.[23] They allege, *inter alia*, that by failing to foreclose, or delaying its foreclosure, the Defendant has falsely represented that the Plaintiffs still owe the discharged debt; and that its sole purpose is to coerce them to pay the debt that underlies the mortgage on the condo.[24] In particular, the Plaintiffs allege that the Bank's failure to foreclose left them liable for homeowner's association fees of over $50,000.[25] They claim that Deutsche Bank's failure to foreclose its lien was "effectively coercive" and "a gross violation of the discharge injunction...."[26]

At least one court faced with similar facts has dismissed a debtor's complaint seeking damages against a secured creditor for its alleged failure to foreclose.[27] In *In re Arsenault*, the debtors owned Florida property subject to a mortgage held by Chase when they filed their Chapter 13 bankruptcy.[28] The Chapter 13 plan surrendered the Florida property in full satisfaction of Chase's claim.[29] Chase took no action against the property, so the debtors sued Chase for an intentional violation of the automatic stay, alleging that "Chase's failure to cause the property to be transferred out of the debtors' names [was] a veiled attempt to collect a debt in violation of the stay and the confirmation order."[30] In a well-reasoned opinion, the court in *Arsenault* dismissed the adversary proceeding for failure to state a claim for which relief could be granted.[31] Based on an analysis of Florida law, including the fact that Florida is a lien-theory state,[32] the *Arsenault* court determined that a creditor cannot be compelled to take affirmative steps to accept surrendered collateral.[33] The court highlighted the Black's Law Dictionary definition of surrender:

1. The act of yielding to another's power or control. 2. The giving up of a right or claim.... 3. The return of an estate to the person who has a reversion

---

**21.** *Marshall Co. Bd. of Educ. v. Marshall Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir.1993).

**22.** 11 U.S.C. § 524(a)(2).

**23.** Doc. 1, at 1, 5–6.

**24.** Doc. 1, at 1.

**25.** Doc. 1, at 3.

**26.** *Id.* at 4–5.

**27.** *Arsenault v. JP Morgan Chase Bank, N.A.*, 456 B.R. 627, 628 (Bankr.S.D.Ga.2011).

**28.** *Id.* at 628, 630 (internal quotation marks omitted).

**29.** *Id.* at 628.

**30.** *Id.*

**31.** *Id.* at 632.

**32.** *Id.* at 630.

**33.** *Id.* at 629.

or remainder, so as to merge the estate in to a larger estate. . . . [34]

The court then declared: "As a matter of law, given the undisputed facts of this case the act of 'surrender' does not obligate [the creditor] to transfer title out of Debtors' names."[35] This court agrees with the court in *Arsenault* that a creditor's "decision whether to foreclose and/or repossess the Property is purely a voluntary and discretionary decision."[36]

Plaintiffs cite nothing that defines a "timely foreclosure," or supports the existence of a cause of action for failure to foreclose as a violation of the discharge injunction under 11 U.S.C. § 524. Instead, Plaintiffs merely argue that Deutsche Bank's motion to dismiss should be denied because Deutsche Bank only cited two published opinions, both from the same court, that support dismissal at this stage of the litigation.[37]

The Defendant cites numerous cases in which courts have concluded that a debtor cannot force a creditor to accept surrendered property.[38] The case on which

---

**34.** BLACK'S LAW DICTIONARY 1458 (7th ed.1999). *Arsenault* quoted the eighth edition of Black's Law Dictionary. *Arsenault*, 456 B.R. at 629. The definitions are the same.

**35.** *Arsenault*, 456 B.R. at 630.

**36.** *Id.* at 632.

**37.** Doc. 23, at 1–3. *See Brown v. Branch Banking & Trust Co.* (*In re Brown*), 477 B.R. 915, 916–17 (Bankr.S.D.Ga.2012); *Arsenault v. JP Morgan Chase Bank, N.A.* (*In re Arsenault*), 456 B.R. 627, 629 (Bankr.S.D.Ga. 2011). *See also Moore v. BAC Home Loan Servicing LP*, 477 B.R. 918, 919–21 (Bankr. S.D.Ga.2012) (granting the creditor's motion for summary judgment instead of a motion to dismiss only because the case involved Georgia law instead of Florida law).

**38.** *See, e.g., In re Rose*, 512 B.R. 790, 793 (Bankr.W.D.N.C.2014) ("Although 'surrender' envisions a debtor relinquishing his or her rights in the collateral, there is no corresponding requirement that the lender . . . do anything with the property."); *Brown v. Bank of Am.* (*In re Brown*), 481 B.R. 351, 361 (Bankr.W.D.Pa.2012) ("The bank has no duty to foreclose on the Property and . . . the delay in foreclosure in no way forms a basis for the assertion that [the bank] is attempting to collect a discharged debt."); *Ogunfiditimi v. Deutsche Bank. Nat'l Trust Co.* (*In re Ogunfiditimi*), Adv. No. 11–0282PM, 2011 WL 2652371, at *2–3 (Bankr.D.Md. July, 6 2011) (dismissing a complaint because a statement of intention to surrender property does not impose an affirmative duty on the creditor to take action); *In re Steinberg*, 447 B.R. 355, 358–59 (Bankr.S.D.Fla.2011) (holding that a creditor may accept mortgage payments from a debtor in exchange for not foreclosing on the mortgage, but that the debtor cannot force the creditor to accept this exchange, stating, "[N]othing in the Bankruptcy Code requires a mortgagee to accept property surrendered by a chapter 7 debtor. Nothing prevents the mortgagee from allowing the debtor to remain in the home."); *In re Cormier*, 434 B.R. 222, 233 (Bankr.D.Mass.2010) ("[The creditor] cannot be compelled to take a deed-in-lieu and is entitled to exercise its options available under the mortgage. . . . "); *Losak v. Beneficial Consumer Discount Co.* (*In re Losak*), 375 B.R. 162, 164–65 (Bankr. W.D.Pa.2007) (dismissing a complaint for, among other things, failing to allege that the creditor accepted the surrender of the property); *Phillips v. City of South Bend* (*In re Phillips*), 368 B.R. 733, 744 (Bankr.N.D.Ind. 2007) ("[T]he Plaintiff could not compel the mortgage holder to accept the surrendered, quitclaimed property. As a consequence, the mortgagor . . . continues to be the owner of the property, with all the rights and obligations."); *In re White*, 282 B.R. 418, 423 (Bankr.N.D.Ohio 2002) ("[T]he Code does not provide for the court or the debtor to direct the means by which the secured creditor deals with the surrendered property."); *In re Koeller*, 170 B.R. 1019, 1023 (Bankr.W.D.Mo. 1994) ("Under the Bankruptcy Code, the surrender of collateral requires the mutual agreement between the parties and occurs as a result of the consent of both parties." (citing *In re Service*, 155 B.R. 512, 514 (Bankr. E.D.Mo.1993)); *In re Service*, 155 B.R. 512, 514 (Bankr.E.D.Mo.1993) ("Whether to proceed with its remedies is within the sole discretion of [the creditor], and Debtors may not compel [the creditor] to enforce its rights.").

Plaintiffs primarily rely, *In re Pratt,*[39] was based on anomalous facts that led to a unique result, and is not persuasive here. In *Pratt,* the debtors surrendered possession of a car to the secured creditor.[40] The car was worthless, but the creditor refused to release its lien unless its claim was paid in full.[41] Under state law the debtors could not "junk" the car without a release of the lien.[42] In order to "junk" the car someone would have had to tow it to the junkyard.[43] The *Pratt* court found, in addition, that the Debtors had timely filed their notice of intention to surrender the vehicle, the debtors did nothing to prevent GMAC from repossessing the car, and that the secured creditor had determined that it was not cost-effective to re-possess the car.[44] Given these facts, the *Pratt* court found that the creditor's refusal to release its lien to allow the debtors to junk the car was objectively coercive,[45] and "had the *practical effect* of eliminating the [debtors'] 'surrender' option...."[46] In so ruling, the court emphasized that a creditor's insistence upon its *in rem* rights un-der state law would not necessarily violate the discharge injunction.[47] But under the unique facts of *Pratt,* where the collateral was entirely without value, the creditor's assertion of its *in rem* rights left the debtors with no option but to pay GMAC's claim in full or continue to own, store and insure the car.[48]

In a case with facts more closely reflecting those here, the First Circuit Court of Appeals distinguished *In re Pratt.*[49] In *In re Canning,* the debtors filed papers that stated that they were surrendering their residence.[50] Two months after entry of the debtors' discharge, the secured creditor sent the debtors a letter stating that it would not foreclose on the residence.[51] The debtors, according to the creditor, re-mained responsible for taxes, insurance, and maintenance.[52] The debtors respond-ed to the letter by demanding that the creditor foreclose upon the property or discharge its mortgage.[53] The creditor still refused to foreclose but reminded the debtors that they did not remain personal-

---

See also *In re Plummer,* 513 B.R. 135 (Bankr.M.D.Fl.2014), which examined whether a *debtor* had to take affirmative steps to turn over surrendered collateral:

Residing in a surrendered home, or allowing others to reside there, is not an act that interferes with a secured creditor's ability to seek possession by available legal means. In Florida, a lien theory state, a mortgagee has no right to possession until transfer at a foreclosure sale. So the mortgagor continues to legally own the property after default until a foreclosure or otherwise valid transfer of title occurs. A debtor's indication of intent to surrender real property does not change this....

*In re Plummer* (internal citations omitted).

39. *Pratt v. Gen. Motors Acceptance Corp. (In re Pratt ),* 462 F.3d 14 (1st Cir.2006).

40. *Id.* at 15–16.

41. *Id.*

42. *Id.*

43. *Id.* at 19.

44. *Id.*

45. *Id.*

46. *Id.* at 20.

47. *Id.*

48. *Id.*

49. *Canning v. Beneficial Maine, Inc. (In re Canning ),* 706 F.3d 64, 69–72 (1st Cir.2013).

50. *Id.* at 66.

51. *Id.* at 67.

52. *Id.*

53. *Id.*

ly liable for the loan.[54] The debtors threatened to file an adversary proceeding for violation of the bankruptcy discharge, but the creditor did not budge from its position.[55] The debtors informed the creditor that they had vacated the property, turned off the utilities, and notified the municipal authorities that the creditor was responsible for obligations pertaining to the residence; the creditor still did not seek to foreclose.[56] The debtors then sued the creditor in bankruptcy court for an alleged intentional violation of the discharge injunction and sought actual and punitive damages.[57] The bankruptcy court and the Bankruptcy Appellate Panel both found for the creditor, and the debtors appealed to the First Circuit.[58]

The First Circuit in *Canning* declared that a "secured creditor ... has the prerogative to decide whether to accept or reject the surrendered collateral,"[59] noting that the creditor's decision must not "constitute a subterfuge intended to coerce payment of a discharged debt."[60] The First Circuit distinguished *In re Pratt* on the basis that in *In re Canning*, the creditor's refusal to foreclose did not force the debtors into yielding "to the secured creditor's 'pay in full' demand or indefinitely remain[ing] in possession of inoperable, worthless and burdensome collateral."[61] That court pointed out that the collateral in *In re Canning* was valuable, unlike the worthless collateral in *In re Pratt*.[62] After

thus distinguishing *In re Pratt*, the First Circuit emphasized that the debtors' reading of *In re Pratt* was overly broad and their interpretation of *In re Pratt* unfairly skewed the balance of rights between debtors and secured creditors against the creditors.[63] Quoting *In re Pratt*, the court in *Canning* concluded: "the line between forceful negotiation and improper coercion is not always easy to delineate, and each case must therefore be assessed in the context of its particular facts."[64]

The facts here bear no resemblance to those in *In re Pratt*, and instead are analogous to those in *In re Canning*. The Plaintiffs here make no allegations that the collateral is worthless. In fact, the documents attached to the complaint show the opposite—that the condo was worth more than $700,000 when they filed their Chapter 11 petition.[65] The Plaintiffs have retained title to and the right to possession and use of the condo since they filed their Chapter 11 case and confirmed their Plan. Because of the value of the condo, Deutsche Bank's *in rem* rights against the condo have retained value, unlike the rights of the creditor in *In re Pratt*.

Perhaps recognizing that their reliance on *In re Pratt* is misplaced, the Plaintiffs attempt to state, or bolster, their cause of action by alleging that by not foreclosing sooner Deutsche Bank has been engaged in a scheme to avoid certain inventory "obligations" imposed by portions of Title 12 of the United States Code.[66] The Plain-

---

54. *Id.*

55. *Id.*

56. *Id.*

57. *Id.*

58. *Id.* at 68.

59. *Id.* at 69–70.

60. *Id.* at 70.

61. *Id.* at 71.

62. *Id.* at 72.

63. *Id.*

64. *Id.* at 73.

65. Doc. 1–2, Exhibit E, at 1.

66. 12 U.S.C. § 29 (2014). Title 12 is a statute that regulates national banking associations and, in material part, restricts how long they

tiffs allege, in essence, that because it has been trying to avoid its alleged Title 12 obligations, the Defendant has forced them to continue owning the property, to their detriment. The Plaintiffs try to couch this alleged scheme in the language of *Pratt* and *Canning,* calling Deutsche Bank's delay in foreclosure a "subterfuge"[67] and "effectively coercive."[68] They fail to explain, though, either in their Complaint or in their opposition to Deutsche Bank's Motion to Dismiss, how the alleged action, or here inaction, of Deutsche Bank amounts to an attempt to coerce them into paying a discharged debt.

Deutsche Bank denies that it is subject to Title 12 at all because it is acting as a trustee with respect to its mortgage claim.[69] Deutsche Bank appears to be correct. Plaintiffs have not cited any statute or case law that would apply the inventory requirements of 12 U.S.C. § 29 to the bank acting as a trustee.[70] Even if Deutsche Bank as trustee were subject to

Title 12, and even if it has been ignoring its Title 12 requirements, it has not violated the discharge injunction because it has not attempted to coerce the Plaintiffs into paying a discharged debt.[71] The Plaintiffs here allege only that they have remained liable for HOA dues, maintenance and other burdens of ownership of the condo—all of which arose post-petition—as a result of this "subterfuge" by the Bank to avoid Title 12 inventory regulations.[72] They do not allege, nor would the facts support, that Deutsche Bank is trying to coerce them into paying the underlying mortgage debt.[73]

Pursuant to state law and the terms of their very own Plan, the Plaintiffs here have retained the rights and duties of ownership and possession of valuable collateral, and the Defendant has retained its state law rights to foreclose upon the property. Here, like in *Canning,* the creditor simply did not foreclose when the debtors

can own or possess certain property under certain circumstances.

**67.** Doc. 1, at 4; *Canning v. Beneficial Maine, Inc.* (*In re Canning*), 706 F.3d 64, 70 (1st Cir.2013).

**68.** Doc. 1, at 4; *Canning,* 706 F.3d at 68–73 (using "coerce" or "coercive" throughout); *Pratt v. Gen. Motors Acceptance Corp.* (*In re Pratt*), 462 F.3d 14, 16–20 (1st Cir.2006) (using "coerce" or "coercive" throughout).

**69.** Title 12 provides a mechanism for national banking associations to act as trustees. 12 U.S.C. § 92a (2014).

**70.** In response to the point that Defendant is acting as a trustee Plaintiffs cite to *Hollis v. Ameriquest Mort. Co.,* where the issue was whether the federal Truth in Lending Act and National Banking Act preempted New Jersey state law. *Hollis v. Ameriquest Mort. Co.,* No. 07–22579, 2009 WL 3030125 (Bankr.D.N.J. Sept. 17, 2009). That issue is not relevant to the facts or issues here.

**71.** *Pratt* and *Canning* were concerned with subterfuges intended to coerce payment of a

discharged debt. *Canning,* 706 F.3d at 70–71 (highlighting, for example, the court's concern for a "subterfuge intended to coerce payment of a discharge debt" and "coercive reaffirmation demands"); *Pratt,* 462 F.3d at 18–20 (emphasizing the concern that "debtors are neither coerced nor harassed by secured creditors into reassuming debts which would otherwise be entitled to discharge" and "debtors … are not unfairly coerced into repaying discharged prepetition debts").

**72.** The HOA or condo dues that Plaintiffs may owe are non-dischargeable because they arose post-discharge, and Plaintiffs have no personal liability for real estate taxes in Florida.

**73.** Even if Deutsche Bank has been trying to avoiding any applicable inventory regulations, it could very well have a legitimate business reason for so doing. The real estate market during the past few years has been abysmal. It would not appear unreasonable for a lender to refrain from taking additional property into its inventory for as long as possible.

wanted it to. The First Circuit in *Canning* recognized that "forces remained at work that could make continued ownership of the real estate uncomfortable—forces like accruing real estate taxes and the desirability of maintaining liability insurance for the premises."[74] That court still did not find that the creditor coerced the debtor into paying a discharged debt.[75] Even with the Title 12 allegations, this case is no different.[76]

There are other problems with the Plaintiffs' Complaint: one of the facts alleged is simply not true. Plaintiffs allege that under their confirmed Plan the Defendant was to pay the homeowner's association fees on the condo.[77] The Plan contains no such provision.[78] Another allegation in the Complaint shows that the Plaintiffs took action contrary to their Plan: the Plan said they were surrendering the condo, but they have been fighting the foreclosure. Fighting the secured lender's right to take title does not equate to surrendering the collateral.

While the Defendant retained its mortgage on the condominium, the Plaintiffs were free to use it, and rent it out, as they pleased.[79] The fact that the Plaintiffs may be liable for certain HOA fees that accrued after they filed their Chapter 11 bankruptcy is a function of applicable state law,[80] and not of any act or omission by the Defendant. The Plaintiffs' own actions—as admitted in their Complaint—are at least partly responsible for the current situation. Unlike in *Pratt* and *Canning*, the Plaintiffs here are preventing the Defendant from pursuing its *in rem* rights by fighting the foreclosure;[81] they are effectively preventing Deutsche Bank from doing what they now complain it should have done.[82]

■ Despite the fact that their fighting the foreclosure has effectively prevented the very "surrender" of the collateral they claim to have made, the Plaintiffs demand myriad damages from Deutsche Bank for its alleged failure to foreclose; and they seek cancelation of its mortgage.[83] If Plaintiffs were granted their demands they would own the luxury condo free and clear of liens and have significant cash in their pockets. This is not the goal or effect of a bankruptcy discharge. Plaintiffs cite no authority that would dictate such a result.

---

74. *Id.* at 68 (quoting *Canning v. Beneficial Me., Inc.* (*In re Canning*), 442 B.R. 165, 172 (Bankr.D.Me.2011).

75. *Id.* at 71–72.

76. *See also, Casarotto v. Mo. Dept. of Revenue,* 407 B.R. 369, 377–78 (W.D.Mo.2009) (granting summary judgment where debtor did not show that a creditor's refusal to release a lien that served a legitimate economic purpose "was a coercive attempt to enforce Plaintiff's personal obligation") (internal quotation marks omitted).

77. Doc. 1, at 3.

78. Doc. 1–3, Exhibit I, at 6–12.

79. *Id.* at 9, 11.

80. FLA. STAT. § 718.116 (2014).

81. Doc. 1–3, Exhibit K.

82. *In re Plummer,* 513 B.R. 135 (Bankr. M.D.Fl.2014) ("The debtor is not required to take any affirmative action to physically deliver the property. But the debtor cannot impede the creditor's efforts to take possession of its collateral by available legal means...").

83. Doc. 1, at 5–6. Fighting the foreclosure action in state court only increases the harms for which the Plaintiffs seek to hold the Defendants responsible. While the Plaintiffs drag out the foreclosure proceedings, real estate taxes and homeowner's association dues will continue to accrue. It would be manifestly unjust for this Court to hold the Defen-

The authorities the Plaintiffs do cite are inapplicable to the facts here.[84] Although the Plaintiffs request this Court to use is broad "all writs" powers under 11 U.S.C. § 105, they cite nothing that would support use of Section 105 to void the Defendant's mortgage.

II. *The Motion to Dismiss the Complaint as to Defendant's allegation of the* right to a deficiency judgment should be granted with leave to amend.

It is undisputed that when the Defendant filed its foreclosure complaint it included a request for a deficiency judgment.[85] It is also undisputed that the Defendant later filed pleadings with the state court seeking to amend its complaint to delete the request for a deficiency judgment, which it asserts was in error.[86]

▮▮▮ The remedy for violation of the discharge injunction is contempt.[87] A bankruptcy court's equitable power under

Section 105(a) is not broad enough to contravene the specific provisions of or enable it to fashion relief that would be inconsistent with the Code.[88] Section 524 does not contain any punitive damage provision analogous to Section 362(k), which provides for punitive damages for an intentional stay violation.[89] Section 524 does not explicitly authorize monetary damages for a violation of the discharge injunction, but a court may award actual damages pursuant to its statutory contempt powers set forth in Section 105.[90] Bankruptcy courts, like all courts, have inherent contempt powers, but those powers must be used with restraint and discretion.[91] A creditor may be liable for contempt if it willfully violates the § 524 permanent discharge injunction.[92] "A creditor's conduct in violating the discharge injunction is willful if the creditor 1) knew that the discharge injunction was invoked; and 2) intended the actions, which violated the discharge injunction." [93]

---

dant responsible for harm caused by the Plaintiffs' own actions.

**84.** Doc. 23, at 5–6. The cases cited by the Plaintiffs that avoid liens are distinguishable as neither involved a violation of the discharge injunction. Neither case avoided a lien valid under state law. *In re Hougland,* No. 6:10–bk–04235–KSJ, at 6 (Bankr. M.D.Fla. Mar. 15, 2013), permitted an order to be filed in the public records and serve as a full satisfaction of release of a mortgage if the creditor did not object to the order. *Arsenault v. Realty Funding Corp. (In re Arsenault),* 184 B.R. 864, 874 (Bankr.D.N.H. 1995), invalidated a contract–and the mortgage the contract created–under New Hampshire state law.

**85.** Doc. 1, at 11.

**86.** Doc. 9, at 3.

**87.** *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 506 (9th Cir.2002); *In re Bassett,* 255 B.R. 747, 755 (9th Cir. BAP 2000), *aff'd in part, denied in part,* 285 F.3d 882 (9th Cir.

2002), *cert. denied,* 537 U.S. 1002, 123 S.Ct. 496, 154 L.Ed.2d 398 (2002).

**88.** *See Hemar Ins. Co. of Am. v. Cox (In re Cox),* 338 F.3d 1238, 1243 (11th Cir.2003) (refusing to use 11 U.S.C. § 105(a) to override the specific language of 11 U.S.C. § 523(a)(8) setting forth the requirements for the dischargeability of student debts).

**89.** *Pereira v. First N. Am. Nat'l Bank,* 223 B.R. 28, 31 (N.D.Ga.1998).

**90.** *Cox v. Zale Del., Inc.,* 239 F.3d 910, 917 (7th Cir.2001); *Pertuso v. Ford Motor Credit Co.,* 233 F.3d 417, 421–23 (6th Cir.2000); *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1388–89 (11th Cir.1996); *Pereira,* 223 B.R. at 31.

**91.** *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); *Alderwoods Grp. Inc. v. Garcia,* 682 F.3d 958, 970 (11th Cir.2012).

**92.** *Hardy,* 97 F.3d at 1390.

**93.** *Nibbelink v. Wells Fargo Bank, N.A.,* 403 B.R. 113, 120 (Bankr.M.D.Fla.2009).

■ The Defendant admits knowing of the discharge and discharge injunction. Although its request for a deficiency judgment was a technical violation of the discharge injunction, the Defendant alleges that it was an unintentional violation. Nonetheless, Plaintiffs should be given an opportunity to amend their Complaint to allege, if appropriate, a willful violation of the Discharge injunction, to seek to hold the Defendant in contempt, and request appropriate damages, not including voiding Deutsche Bank's mortgage.[94]

For the reasons stated, it is

ORDERED:

1. The Defendant's Motion to Dismiss Adversary Proceeding (Doc. 9) is GRANTED as to all allegations and claims for relief based on the Defendant's alleged failure to foreclose, or for not "timely" foreclosing on the condo, with prejudice.

2. The Motion to Dismiss Adversary Proceeding (Doc. 9) is GRANTED, without prejudice, to the extent the Complaint alleges a violation of the discharge injunction due to the Defendant's foreclosure compliant containing a request for a deficiency judgment. Plaintiffs have twenty-one (21) days from the date of this Order within which to file any amended complaint with respect to this allegation.[95]

DONE and ORDERED.

94. Because Deutsche Bank has withdrawn its request for a deficiency judgment in state court, there is no longer any ongoing violation of the discharge injunction. By granting the Plaintiffs leave to amend, the Court is not ruling that the Plaintiffs have a viable action for contempt against the Defendant. If the Plaintiffs elect to amend their complaint, they must comply with the Local Rules of this Court and the Northern District of Florida on form of pleadings.

95. If the Plaintiffs elect to amend their complaint, they must comply with the Local Rules of this Court and the Northern District of Florida on form of pleadings.